Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | | District of TEXAS SHERMAN DIVISION | |
|---|---|---|---|
| Name (under which you were convicted): DEREK MYLAN ALLDRED | | | Docket or Case No.: 4:17CR105 |
| Place of Confinement: FCI SHERIDAN OREGON | | Prisoner No.: 21711-018 | |
| UNITED STATES OF AMERICA | | Movant (include name under which you were convicted) | |
| | v. | DEREK MYLAN ALLDRED | |

FILED

AUG 1 2 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

### MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION
   121 E. PECAN STREET, SUITE 112
   SHERMAN, TX 75090

   (b) Criminal docket or case number (if you know): 4:17CR105

2. (a) Date of the judgment of conviction (if you know): UNKNOWN

   (b) Date of sentencing: AUGUST 22, 2018

3. Length of sentence: 288 - MONTHS

4. Nature of crime (all counts): 10 COUNTS TOTAL PRIOR TO PLEA AGREEMENT
   1. FELON IN POSSESSION OF A FIREARM 18 U.S.C. § 922 (G)(1); 2. ACCESS DEVICE FRAUD 18 U.S.C. § 1029 (A)(2);
   3,4,5. AGGRAVATED IDENTITY THEFT 18 U.S.C. § 1028A; 6,7,8,9,10. MAIL FRAUD 18 U.S.C. § 1341

5. (a) What was your plea? (Check one)

   (1)  Not guilty ☐          (2)  Guilty ☑          (3)  Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?
   SINGLE COUNT OF MAIL FRAUD (18 U.S.C. § 1341)
   TWO COUNTS OF AGGRAVATED IDENTITY THEFT (18 U.S.C. § 1028A)

6. If you went to trial, what kind of trial did you have? (Check one)          Jury ☐          Judge only ☐

N/A

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☑

8. Did you appeal from the judgment of conviction?     Yes ☑     No ☐

9. If you did appeal, answer the following:

(a) Name of court: UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

(b) Docket or case number (if you know): NO. 18-40813

(c) Result: DENIED

(d) Date of result (if you know): JULY 25, 2019

(e) Citation to the case (if you know): UNKNOWN

(f) Grounds raised: DEFENDANT DID NOT KNOWINGLY ENTER HIS PLEA BECAUSE HE WAS NOT CORRECTLY ADVISED OF HIS MAXIMUM SENTENCING EXPOSURE AS REQUIRED BY RULE 11.

(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know): N/A

(2) Result: N/A

(3) Date of result (if you know): N/A

(4) Citation to the case (if you know): N/A

(5) Grounds raised: N/A

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☑     No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: UNITED STATES DISTRICT COURT, EASTERN DIVISION OF TEXAS, SHERMAN DIVISION

(2) Docket or case number (if you know): 4:17 CR105

(3) Date of filing (if you know): UNKNOWN

(4) Nature of the proceeding: MOTION FOR ORDER TO PRODUCE DOCUMENTS

(5) Grounds raised: DEFENDANT ASKED COURT FOR A ORDER REQUIRING THE GOVERNMENT AND PREVIOUS COUNSEL TO TURN OVER FINANCIAL DOCUMENTS TO ASSIST IN PREPARATION OF APPEAL.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☑

(7) Result: DENIED

(8) Date of result (if you know): UNKNOWN

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF TEXAS

(2) Docket or case number (if you know) 4:17 CR105

(3) Date of filing (if you know): UNKNOWN

(4) Nature of the proceeding: SECOND MOTION FOR ORDER TO PRODUCE DOCUMENTS

(5) Grounds raised: DEFENDANT RAISED SAME MOTION, ASKING FOR ADDITIONAL RELIEF IN PRODUCING DOCUMENTS.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☑

(7) Result: DENIED

(8) Date of result (if you know): UNKNOWN

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐   No ☑

(2) Second petition:   Yes ☑   No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: N|A

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:** INEFFECTIVE ASSISTANCE OF COUNSEL

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):
DEFENSE COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE SIXTH AMENDMENT OF THE CONSTITUTION, WITH THE ACTIONS OF DEFENSE COUNSEL (TRIAL COUNSEL) FALLING WELL OUTSIDE THE WIDE RANGE OF OBJECTIVELY REASONABLE PROFESSIONAL CONDUCT AND SUBSEQUENTLY SEVERELY PREJUDICING THE DEFENDANT BY THE FOLLOWING:

(1) DEFENSE COUNSEL FAILED TO INVESTIGATE: FROM THE ONSET OF THIS INSTANT CASE, THE DEFENDANT HAS BEEN CLEAR THAT HE WAS INNOCENT OF ALL CHARGES, THAT HE NEVER "STOLE" THE VICTIMS CREDIT CARD AND THAT HE ALWAYS HAD PERMISSION TO USE IT.  DEFENDANT WAS ALSO CLEAR THAT HE NEVER STOLE ANYONES IDENTITY AND WAS INNOCENT.  DEFENDANT WROTE OVER 20 LETTERS TO HIS TRIAL COUNSEL OVER 14-MONTHS DEMANDING INFORMATION THAT NEEDED TO BE INVESTIGATED (LETTERS ARE ATTACHED) WITH STAMPS FROM THE FEDERAL DEFENDERS OFFICE SHOWING THE DATE RECEIVED) THAT PROVED DEFENDANTS FACTUAL INNOCENCE CLEARLY.  TRIAL COUNSEL NEVER RESPONDED OR INVESTIGATED.  HAD TRIAL COUNSEL INVESTIGATED THEY WOULD HAVE FOUND THE FOLLOWING: (A) THE CREDIT CARD STATEMENTS WOULD HAVE SHOWN THE DEFENDANTS ADMITTED USAGE OF THE CHASE VISA CARD FROM ROUGHLY APRIL 2017 THRU MAY 28, 2017.  →
CONTINUED

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☑

(2) If you did not raise this issue in your direct appeal, explain why:
ATTORNEY JAMES WHALEN SAID MY "IAC" ISSUES NEEDED TO BE RAISED ON A SEPERATE 2255.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☑

(2) If your answer to Question (c)(1) is "Yes," state: N|A

Type of motion or petition: N|A

Name and location of the court where the motion or petition was filed: N|A

## Ground One Continuation of (A)

K also would have shown the most glaring exculpatory evidence, a payment made by the victim (Dorita Watkins), on the telephone with a Chase Visa Customer Service Representative, paying off my charges ($8,000.00) with money I gave. In other words, you can't make a $8000.00 payment for charges made, then claim the card was stolen at the same time. Defendant learned post conviction that the counsel not only never requested any documents from the credit card company, he never called the credit card company as defendant had asked countless times in letters (see attached letters, all received by counsel). Had he made the basic call, he would have learned the following, Chase Bank refused to reveal any charges because the victim not only knew the defendant but was also aware of and authorized the charges (this information alone is entirely exonerating and completely dissolves and unravels the victim's story and the NCIS investigators testimony [on Sept. 29, 2017 Detention Hearing] that the defendant stole her credit card and she had no idea he was using it [see attached detention hearing transcript page #7 & 8])

(B) Counsel failed to obtain Chase Bank customer service records: Despite numerous requests from the defendant, counsel made no effort to contact customer service to investigate any of the basic claims defendant made in countless letters outlining (letters attached) the droves of recorded calls by customer service with the victim, Dorita Watkins, where the victim is approving and acknowledging all

1

CHARGES MADE BY THE DEFENDANT WITH A "LIVE" CUSTOMER SERVICE AGENTS. HAD COUNSEL AGAIN PERFORMED ANY TYPE OF INVESTIGATION, COUNSEL WOULD HAVE IMMEDIATELY FOUND THROUGH THESE RECORDINGS THAT THE VICTIM'S KNOWLEDGE AND GOVERNMENTS STORY THAT THE DEFENDANT "STOLE" AND USED THE CREDIT CARD "WITHOUT PERMISSION" WAS UNTRUE, THUS EXONERATING THE DEFENDANT. THIS EVIDENCE IS NOW CLEAR AND FUNDAMENTALLY EXONERATES THE DEFENDANT. THIS EVIDENCE WAS SO EASILY AVAILABLE BY A 3ʳᵈ PARTY THAT EVEN "THE ATLANTIC" MAGAZINE WAS ABLE TO OBTAIN IT, AS REFERENCED IN THEIR 2018 ARTICLE, THAT INFERRED THE VICTIM (DORI WATKINS) WAS AWARE OF DEFENDANTS USE AND AUTHORIZED THE CHARGES. (SEE ATTACHED EXCERPT FROM ATLANTIC DORIM MAGAZINE).

(C) DEFENSE COUNSEL FAILED TO INVESTIGATE IDENTITY THEFT CHARGES AT THE MOST BASIC LEVEL OR TO CHALLENGE CHARGE:
DESPITE NUMEROUS REQUESTS, DEFENSE COUNSEL FAILED TO INVESTIGATE THIS CHARGE. DEFENDANT WROTE NUMEROUS LETTERS TO COUNSEL (ALL LETTERS ATTACHED) ABOUT THIS SPECIFIC ISSUE OF DEFENDANT BELIEVING HE DIDN'T COMMIT IDENTITY THEFT, THAT HE HAD NEVER "USED" VICTIM DORI WATKINS NAME IN ANY FORM (EXCEPT FOR USE OF HER CREDIT CARD, WITH HER PERMISSION)

AT DEFENDANTS CHANGE OF PLEA HEARING, COUNSEL DIRECTED DEFENDANT TO "TELL THE COURT" HOW I COMMITTED IDENTITY THEFT (SEE CHANGE OF PLEA HEARING) AND THAT I USED THE NAME "RICHARD TAILOR", WHICH DEFENDANT DID.

HAD DEFENSE COUNSEL INVESTIGATED ANY OF THIS, HE WOULD HAVE FOUND AND VERIFIED THAT THE NAME "RICHARD DEVER TAILOR" WAS A COMPLETELY

FICTITIOUS NAME (BELONGING TO NO ONE). IF INDEED THE CHARGE WAS RELATED TO THE USEAGE OF DORI WATKINS CREDIT CARD, HAD COUNSEL PERFORMED ANY INVESTIGATION AS ALLEGED IN "GROUND (1)(A-B), HE WOULD HAVE FOUND IT VIVIDLY CLEAR THAT DEFENDANT WAS GIVEN( THE CARD BY THE VICTIM AND PERMISSION TO USE IT.

(D) DEFENSE COUNSEL FAILED TO INVESTIGATE ANY OF THE GOVERNMENTS "VICTIMS" CLAIMS MADE IN THE PRESENTENCE REPORT OR ANY OF THE ACCUSATIONS STATEMENTS/ FACTS USED TO ENHANCE DEFENDANTS REPORT/SENTENCE BEFORE FILING OBJECTIONS BY THE FOLLOWING:

DEFENDANT MAILED NUMEROUS LETTERS TO COUNSEL ABOUT THE INFORMATION AVAILABLE TO EITHER MITIGATE OR COMPLETELY DISPROVE THE REPORT. DEFENSE COUNSEL INVESTIGATED ALMOST NOTHING.

DEFENSE COUNSEL SENT HIS INVESTIGATOR "STEVE" TO SEE DEFENDANT ONCE, IN THE WEEK OF SEPTEMBER 11, 2017, FOR THE PURPOSE OF SEEKING A "RELEASE" ADDRESS FOR DEFENDANTS UPCOMING DETENTION HEARING. OVER THE NEXT 10-11 MONTHS, DEFENDANT WROTE COUNSEL MULTIPLE TIMES, ASKING: ① WHERE IS STEVE? ② ARE YOU INVESTIGATING (ALONG WITH FACTS TO LOOK AT) ③ WHAT ARE WE DOING TO INVESTIGATE MY CLAIMS (AUGUST 08, 2017 LETTER) ④ IS ANYONE GOING TO COME SEE ME. DEFENDANT SENT DEFENSE COUNSEL A JULY 24, 2018 LETTER SAYING " THE PROSECUTION HAS GONE TO GREAT LENGTHS TO PROSECUTE ME YET ALL THE INFORMATION I'VE GIVEN YOU TO DISPUTE MANY OF THE FACTS HAS NEVER BEEN LOOKED AT OR BROUGHT FORWARD". DEFENSE COUNSELS INVESTIGATOR "STEVE" WAS NEVER SEEN AGAIN (AFTER 5 MINUTE SEPT. 11ᵗʰ MEETING).

AS OUTLINED IN LETTERS TO COUNSEL, ALL AVAILABLE INFORMATION NEEDED TO BE

INVESTIGATED SUCH AS:

① THE COURT AND PROBATION USED THE DEFENDANTS VISION/BLINDNESS (OR LACK THEREOF) AS A AGGRAVATING FACTOR. THE COURT WENT ON RECORD TO SAY "DEFENDANT DIDN'T COMPLAIN TO JAIL STAFF ABOUT HIS VISION UNTIL AFTER THE JAN. 2018 PSI". THIS IS NOT TRUE. HAD COUNSEL PULLED DEFENDANTS "INCUSTODY MEDICAL RECORDS" AS REQUESTED IN LETTERS FROM DEFENDANT, THE RECORDS WOULD HAVE CLEARLY SHOWN DEFENDANTS BLINDNESS/TREATMENT FROM DOCTORS SINCE HIS JUNE 01, 2017 ARREST. PRESENTING THESE RECORDS WOULD HAVE CLEARLY ELIMINATED THIS ALLEGATION FROM THE PSI AND COURT RECORD.

② THE COURT AND PROBATION USED AS AN AGGRAVATING FACTOR A STATEMENT THAT DEFENDANT HAD MOVED AROUND TO "MEET" WOMEN. AGAIN, DEFENDANT WROTE DEFENSE COUNSEL ABOUT THE NATURE OF EACH INDIVIDUAL RELATIONSHIP. HAD THE COUNSEL INVESTIGATED ANY OF DEFENDANTS CLAIMS, IT COULD HAVE SHOWN NOT ONLY DID DEFENDANT NEVER MOVE TO MEET ANYONE, THAT HE WAS "GEOGRAPHICALLY" STATIONARY. PRESENTING THIS EVIDENCE WOULD HAVE SHOWN THE COURT AND PROBATION THAT INDEED HE NEVER 'MOVED AROUND' ANYWHERE, THUS ELIMINATING THIS AGGRAVATING FACT FROM THE RECORD.

③ THE COURT AND PROBATION USED AS AN AGGRAVATING FACTOR IN ITS REPORT AND AT SENTENCING, THAT THE DEFENDANT DIDN'T DO ENOUGH TO "GET AWAY" FROM A ALLEGED GUN THAT VICTIM SON WATKINS LEFT IN HER VEHICLE. HAD COUNSEL INVESTIGATED THIS, HE WOULD HAVE FOUND FROM DEFENDANTS PHONE RECORDS HE NEVER SPENT SUCH A MINUTE, SUPPORTING DEFENDANTS CLAIM THAT VICTIM HAD MADE UP THE TECHNIQUE/TALE. PRESENTING THESE RECORDS WOULD HAVE CLEARLY SHOWN THAT DEFENDANT WAS NEVER NEAR HER GUN, THUS ELIMINATING THIS AGGRAVATING FACTOR.

4

④ THE BOXES AND LOCATION USED AS A AGGRAVATING FACTOR
THE "DOLLAR" AMOUNT "LOST" FROM THE CRIME. THE DEFENDANT
WROTE PAYROLL "3" DETAILED LETTERS (ATTACHED) BREAKING DOWN
VICTIMS/DOLLAR AMOUNTS FOR VERIFICATION. HE INVESTIGATED
NOTHING. HAD HE INVESTIGATED ANYTHING IT WOULD HAVE SHOWN.

Ⓑ ALLEGED CLAIMS FROM CINDI PARDINI WERE FALSE AND
FABRICATED. MS. PARDINI CLAIMED I STOLE/EMBEZZLED $250,000 (THE
AMOUNT HAS GROWN TO OVER $1,000,000 NOW) DEFENDANT PROVIDED
CLEAR, EXONERATING EVIDENCE THAT HAD THEY BEEN BROUGHT TO
COURT IT WOULD HAVE EXONERATED DEFENDANT FROM MS. PARDINI'S
CLAIMS. LETTERS TO DEFENSE COUNSEL (ATTACHED) DATED
JUNE 21, 2018, JULY 3, 2018, JULY 24, 2018 DETAIL MUCH
OF THE INFORMATION THAT SHOULD HAVE BEEN INVESTIGATED TO
MITIGATE THE CASE AND LOWER. THE MOST GLARING EVIDENCE OF
ALL IS ONLY 8-MONTHS PRIOR TO MS. PARDINI CLAIMS OF MY THEFT
SHE HAD MADE THE SAME CLAIMS AGAINST AL MEIN/THEE FOR
THE EXACT SAME AMOUNT AND CIRCUMSTANCES. THE SIMPLEST
OF DOCUMENTS (DISAPPEARANCES/POLICE DEPARTMENTS/INVESTIGATION)
SHOWED CLEARLY NO THEFT OR WRONGDOING BY DEFENDANT.
HAD THIS BEEN PRESENTED TO THE COURT IT WOULD HAVE
CLEARLY SHOWN NO WRONGDOING BY THE DEFENDANT.
Ⓑ ALLEGED CLAIMS BY DR. KIMBERLY RATCLIFF-SCHULTZ WERE
FALSE AND AGAIN NEVER INVESTIGATED. HAD THEY, IT WOULD
HAVE CLEARLY SHOWN THERE WAS NO FRAUD/WRONGDOING AND
REASONS FOR A FINANCIAL ENHANCEMENT. UP UNTIL THE PSI,
THERE HAD NEVER BEEN ANY CLAIMS OF IMPROPRIETY.

5

DEFENDANT CLEARLY OUTLINED FACTS TO BE INVESTIGATED
IN THE JULY 03, 2018 LETTER TO COUNSEL. HAD COUNSEL
INVESTIGATED DR. HARCLAFFS CLAIMS, IT WOULD HAVE
SHOWN THE COURT AND PROBATION THERE WAS NO JUST-
IFICATION FOR AN ENHANCEMENT. THERE WAS NO THEFT,
POLICE REPORT FOR YEARS AFTER THE RELATIONSHIP UNTIL
THIS INSTANT CASE.

Ⓒ ALLEGED CLAIMS FROM VICTIM 'JC' AGAIN WERE ADDRESSED
IN 2 LETTERS (JULY 03 AND JULY 24) [ATTACHED] AND NEVER
INVESTIGATED. 'JC' CLAIMED DEFENDANT HAD OPENED AN
AMERICAN EXPRESS CARD IN HER NAME, AND CHARGED IT. HAD
COUNSEL INVESTIGATED AND VERIFIED THE FACTS, FACTS COULD
HAVE BEEN GIVEN TO THE COURT AND PROBATION SHOWING THE CARD
HAD BEEN OPENED YEARS BEFORE DEFENDANT EVEN MET 'JC'.
SHOWING THIS WOULD HAVE ELIMINATED THIS FROM THE ENHANCEMENTS
ALTERING THE OUTCOME.

Ⓓ ALLEGED CLAIMS AND ENHANCEMENTS GIVEN ON BEHALF OF
'MB' (MISSI BRANDON) WERE ADDRESSED IN LETTER TO
COUNSEL ON (JULY 03, 2018 - ATTACHED) AND AGAIN NEVER
INVESTIGATED. 'MB' CLAIMS SHE LOST HER JOB / SUFFERED
FROM EMOTIONAL HARM FROM RELATIONSHIP WITH DEFENDANT.
A SIMPLE PROTOCOL / INVESTIGATION WOULD HAVE SHOWN SHE
LOST HER JOB INDEED BUT NOT FOR THE REASONS SHE GAVE.
THE AIRLINE (SUN COUNTRY) SHE WORKED FOR HAD / HER ON
PERMANENT PROBATION FOR "DRINKING AND FLYING" WHILE
WORKING AS A FLIGHT ATTENDANT (YEARS PRIOR TO MEETING ME)

HAD COUNSEL INVESTIGATED THIS, M WOULD HAVE BEEN SHOWN TO THE COURT THAT SHE DID LOSE HER JOB BUT M WAS FOR BEHAVIOR AND CONSEQUENCES GIVEN TO HER LONG BEFORE MEETING DEFENDANT. PRESENTING THIS TO THE COURT WOULD HAVE ELIMINATED THE ENHANCEMENT GIVEN.

(E) ALLEGED CLAIMS AND ENHANCEMENTS FOR 'VICTIM' 'LD' (LINDA DYAS) WERE NEVER INVESTIGATED BY COUNSEL AT ALL. AGAIN, IN LETTERS TO COUNSEL ON JULY 03, 2018, I OUTLINE EVERY DETAIL OF INFORMATION THAT WAS EASILY VERIFIABLE AND COMPLETELY EXONERATING ME FROM ANY/ALL CLAIMS MADE BY 'LD'. HAD THESE BEEN PRESENTED, M (LD'S CLAIMS) NEVER WOULD HAVE BEEN USED. THERE WAS CLEARLY NO FINANCIAL IMPROPRIETY AND WITH INVESTIGATION M WOULD HAVE BEEN PROVEN.

(5) THE COURT AND PROBATION USED AS AN AGGRAVATING FACTOR AND DENIED ACCEPTANCE OF RESPONSIBILITY FOR WHAT WAS CALLED MAKING "VARYING STATEMENTS ABOUT HIS EMPLOYMENT AND HEALTH." DEFENDANT IMMEDIATELY AFTER HIS JAN. 19, 2018 PSI INTERVIEW WROTE DEFENSE COUNSEL ON JAN. 22, 2018 (LETTER ATTACHED). HAD DEFENSE COUNSEL FOLLOWED-UP ON SAID LETTER AND HELPED RECTIFY THIS SITUATION, M WOULD NOT HAVE BEEN USED AGAINST THE DEFENDANT ULTIMATELY AGGRAVATING HIS SENTENCING AND OUTCOME.

(E) DEFENSE COUNSEL FAILED TO INVESTIGATE DEFENDANTS TIMELINE OF EVENTS ALL BASED ON FACTS FROM EITHER THE INDICTMENT ITSELF OR TESTIMONY THAT SHOWS BY FACT AND RECORDS DEFENDANT CHARGES SHOULD HAVE BEEN DISMISSED.

1

Again, Despite numerous requests, Defense Counsel failed to investigate any of the actual timeline (attached) and to challenge it with the NCIS investigators testimony on the Sept. 24, 2017 detention hearing. Investigating this testimony (Sept 24, 2017 detention hearing) as I asked and stated in letters to defense counsel on Sept 29, 2017 (attached) and again on Oct. 23, 2017 (attached) would have revealed the following as also stated in the indictment:

1. From roughly April 16, 2017 through May 14, 2017, Dori Watkins states she was unaware I was using the card.

2. As stated in the indictment "During the relationship Alonzo used two of the individuals credit cards without permission". The superseding indictment echos this.

3. At the Sept. 24, 2017 detention hearing, the lead investigator in this case echoed and supported the above theory, that Defendant stole the card, used it without permission and the victim only became aware of the use on May 14, 2017, never before.

It also would have revealed the following exculpatory facts about the use of: the credit card, its charges (the dates used), its payments (the dates payments were made by the victim herself) and the customer service phone calls made during that time period. The facts show that:

1. The entire 1½ months, the victim (Dori Watkins) claims to have no knowledge Defendant was using the card, she was actually in fact approving all of the charges, speaking to customer service agents (all recorded).

2. Victim Dori Watkins made a $8,000⁰⁰ payment with money given to her by Defendant. Victim knowlingly sent a authorization letter to Dallas Marriott Hotel authorizing Defendants Client Alonzo use.

8

3. HAD THE TIMELINE BEEN INSINUATED, IT CLEARLY STATES AND SHOWS IN THE COURTS OWN RECORDS THROUGH THE U.S. ATTORNEYS OWN STATEMENTS THAT FROM APRIL 5th 2017 THROUGH JUNE 1, 2017 DEFENDANT "USED WITHOUT PERMISSION" THE VICTIMS CREDIT CARD. YET, A COMPLETE INVESTIGATION CLEARLY SHOWS THAT THE VICTIM WAS AUTHORIZING ALL THE CHARGES AND MAKING PAYMENTS DURING THIS SAME TIMEFRAME.

IF FURTHER INFORMATION IS NEEDED, DEFENDANT WOULD REQUEST A EVIDENTIARY HEARING.

II. DEFENSE COUNSEL FAILED TO REMOVE HIMSELF DUE TO A POTENTIAL CONFLICT OF INTEREST / HAVING POSSIBLE CONFLICTING INTERESTS AS A PRIOR UNITED STATES NAVAL ATTORNEY AND NAVAL OFFICER

DURING A POST-SENTENCE INTERVIEW WITH THE MEDIA, DEFENDANT LEARNED THAT HIS TRIAL COUNSEL SERVED WITH "DISTINCTION" (AS THE INTERVIEWER EXPLAINED) AS A OFFICER IN THE UNITED STATES NAVY WORKING IN THE JUDGE ADVOCATES GENERAL CORPS AS A ATTORNEY. AT THE CENTER OF THIS INSTANT CASE AND MENTIONED THROUGHOUT THE RECORD, AS WELL AS THE ORIGINAL CHARGE, WAS THE CHARGE THAT THE DEFENDANT IMPERSONATED A UNITED STATES NAVAL OFFICER.

TRIAL COUNSEL NEVER ONCE MENTIONED HIS DISTINGUISHED SERVICE AS A NAVAL OFFICER. TRIAL COUNSEL NEVER DISCUSSED THE CONFLICT WITH THE COURT, HIS SERVICE OR THE CONTINUED TIES HE HAS WITH THE MILITARY AS A OFFICER AND VETERAN. TRIAL COUNSEL HAD A OBLIGATION TO AT A MINIMUM LET THE

Court and Defendant investigate this conflict during the "pre-plea" stage to assure trial counsel was able to provide a zealous defense that was not hampered by conflict or conflicting belief's or interests.

Had trial counsel made the Court and Defendant aware of his statues as a officer in the United States, the defendant would have asked through the Court these very simple questions:

    ① Are you proud of your military service?
    ② Are you proud of other veterans and their service / sacrifices made?
    ③ Did you wear your uniform proudly?
    ④ Do you have any continued ties to the military / organizations?
    ⑤ What is your opinion of someone committing "Stolen Valor"
        in the uniform you proudly wore, in the branch of the
        military you served in?

Defense / trial counsel cannot affirmatively say they he acted without conflict. Remaining as counsel on this case, counsel did not offer a zealous defense. Counsel did not challenge to governments case.

The Model Rules of Conduct 1.7 clearly address this issue of conflicts of interest. §1.07 (b)(2) states a lawyer shall not represent a person if the representation of that person: (2) reasonably appears to be or become adversely limited by the lawyers of the law firms responsibility to another client or to a third party or by the lawyers or law firms own interests.

10

SHOULD THE COURT NEED FURTHER CLARIFICATION ON THIS SPECIFIC ISSUE, DEFENDANT REQUESTS A EVIDENIARY HEARING.

III. DEFENSE COUNSEL FAILED TO SUBMIT OR PROVIDE ANY TYPE OF MITIGATING EVIDENCE THROUGHOUT THE PRESENTENCE AND SENTENCING PHASE

DEFENDANT IN THIS CASE MADE REPEATED ATTEMPTS THROUGH LETTERS TO GET COUNSEL OR HIS INFORMATION TO BUILD AND PROVIDE EVIDENCE TO THE COURT AND U.S. PROBATION IN MITIGATION FOR THE DEFENDANT. THE DEFENDANT WAS IGNORED. (SEE ATTACHED LETTERS TO COUNSEL)

THROUGH THE VAST TREASURES OF MITIGATING EVIDENCE, MITIGATING PEOPLES/WITNESSES HE COULD HAVE GOTTEN (ALL OF THESE LISTED IN LETTERS ON JULY 24, 2018, JULY 12, 2018, JULY 03, 2018, JUNE 21, 2018) HE PRESENTED NOTHING AND MADE NO ATTEMPT TO GET IT.

IN A JULY 25, 2018 <sup>4PM</sup> TO DISTRICT COURT JUDGE MAZZANT, A "S.O.S."/ HAIL MARY LETTER, DEFENDANT CLEARLY OUTLINES THESE VERY PROBLEMS. (LETTER ATTACHED AND IN THE COURTS FILE AS WELL), STATING ULTIMATELY HE HAS COMPLETELY LOST CONFIDENCE IN HIS COUNSEL.

HAD TRIAL COUNSEL INVESTED TIME INTO PRESENTING THIS TO THE COURT, IT WOULD HAVE ALLOWED THE COURT TO CONSIDER MITIGATING FACTS AT SENTENCING CHANGING THE OUTCOME.

II. DEFENSE COUNSEL WAS INEFFECTIVE IN EXPLAINING AND MISREPRESENTING DEFENDANTS PLEA AGREEMENT

DEFENSE COUNSEL ALLUDED AT DENTON COUNTY JAIL WITH A PLEA AGREEMENT. IN HAND THE MORNING IT WAS DUE IN COURT. THE PLEA AGREEMENT THAT WAS PRESENTED AND SIGNED THAT DAY WAS FOR 0-20 YEARS FOR MAIL FRAUD AND (2) COUNTS OF IDENTITY THEFT FOR A TOTAL OF (24) MONTHS NOT THE (48) I RECEIVED.

IN ADDITION, ONLY ONE PERSON IS MENTIONED IN MY INDICTMENT AND PLEA AGREEMENT. IT WAS NEVER EXPLAINED TO ME THAT MULTIPLE PEOPLE WOULD BE BROUGHT INTO THIS CASE AFTER SIGNING THE PLEA AGREEMENT. (THIS IS CLEARLY OUTLINED IN MY JULY 25, 2018 'S.O.S' LETTER TO THE COURT ASKING FOR SOME TYPE OF HELP BECAUSE COUNSEL WOULDN'T RESPOND TO ME) MY JULY 03, 2018 LETTER TO COUNSEL AGAIN EXPLAINS THIS, SAYING I NEVER WOULD HAVE SIGNED THE PLEA HAD I KNOWN THESE THINGS.

IN (4) DIFFERENT LETTERS TO COUNSEL (AND 1 TO COURT) I SPECIFICALLY SAY I WANT TO PULL MY PLEA BECAUSE THE 'SPIRIT' OF THE PLEA HAD NOT BEEN FULFILLED. (LETTERS ATTACHED) (JULY 12, 2018, JULY 3rd, 2018

COUNSEL SUBMITTED TO DEFENDANT AS DISCREPANCIES IN COLLENDANCE THAT DEFENDANTS GUIDELINES WOULD BE (12-18 MONTHS FOR MAIL-FRAUD) (24-MONTHS IDENTITY THEFT). (LETTERS ATTACHED JULY 25 - TO JUDGE MAZZANT - JULY 24, JULY 12, JULY 03, JAN 03, 2018.

IN MY DECEMBER 12, 2017 LETTER, I BECAME NERVOUS ABOUT MY 'PLEA'

AND I SPECIFICALLY ASK WHY THERE IS NO "TIME SERVED" DOWN FOR A ACCUSED UPON SENTENCE? IT WAS NEVER ANSWERED.

TRIAL COUNSEL FAILED AT EVERY LEVEL AND EVEN COUNSEL EXPLAINING MY PLEA, NOT ANSWERING ANY QUESTIONS EVEN TO THE POINT OF FILLING MY PLEA. I ANSWERED THESE ISSUES MULTIPLE TIMES (EVEN DIRECTLY TO THE DISTRICT COURT) AND WAS COMPLETELY IGNORED. DTEC(8) DOCUMENTED LETTERS CLEARLY SHOW THIS IS NOT A ISSUE OF SOUR GRAPES OR HINDSIGHT, THIS WAS A ISSUE LONG BEFORE, AND LASTED THROUGH SENTENCING. HAD COUNSEL PERFORMED, I WOULD HAVE NOT MOVED FORWARD, WOULD HAVE NOT SIGNED AND WOULD HAVE PROCEEDED TO TRIAL.

II. DEFENSE COUNSEL WAS INEFFECTIVE IN EXPLAINING RESTITUTION AGREEMENT SIGNED MINUTES PRIOR TO BEGINNING OF SENTENCING HEARING

DEFENSE COUNSEL MISREPRESENTED THE LAST MINUTE RESTITUTION AGREEMENT PRESENTED TO DEFENDANT AT THE SENTENCING HEARING. THE DEFENDANT ORIGINALLY HAD A OBLIGATION OF ROUGHLY $12,000 (AS EXPLAINED FROM TRIAL COUNSEL) FROM THE ORIGINAL PLEA AGREEMENT. MINUTES PRIOR TO THE BEGINNING OF THE SENTENCING HEARING, TRIAL COUNSEL AND THE US ATTORNEY APPROACHED DEFENDANT WITH A PLEA AGREEMENT STATING, "IF I AGREE TO $242,000⁰⁰ OF RESTITUTION WITH CHARA PARODI, IT WILL LOWER MY OVERALL EXPOSURE BY CLOSE TO 8-10 YEARS PER THE GUIDELINES, WHICH I WAS SHOWED". I SIGNED FOR THE OBVIOUS BENEFIT LOWERING MY POINTS FROM 29 to 21 (AND THIS IS PRIOR TO ANY ALLOWANCES POTENTIALLY LOWERING MORE). I NEVER RECEIVED ANY BENEFIT OF TIME OFF AS SUBMITTED TO ME. DEFENDANT NEVER WOULD HAVE SIGNED ANY RESTITUTION AGREEMENT TO PAY $240,000+ IF THERE WAS NO BENEFIT TO HIM. SIMPLY, HAD IT BEEN EXPLAINED AT FACE VALUE, IT OFFERED

17

No real benefit to the defendant if enlarged morally. (Letter attached)
to appellate counsel explaining the entire misrepresentation.

**VII.** Counsel failed to address Defendant's concerns, stay in contact
with defendant at critical junctures or follow through with
promised actions throughout representation

Defense counsel (as outlined in numerous letters sent to counsel and the

court) did not answer critical questions at any point in the representation

process. Because of these actions, Defendant was forced to write the District

Court, outlining his concerns and ultimately telling the court he (Defendant),

because of this had lost all faith and confidence in his counsel (after outlining

why) and requested reassignment of counsel. Defense counsel was not just

ineffective, he was nonexistent. How this action ultimately changed the outcome

is simple, had Defense counsel done what Defendant asked in regards to his post

change of plea concerns, Defendant would have been able to pull his plea agreement

as requested to Defense counsel in three-four letters (attached) asking to do so.

VII. DEFENSE COUNSEL FAILED TO FILE MOTION OF APPEAL AFTER
DETENTION HEARING AS PROMISED

DEFENSE COUNSEL FAILED TO FILE MOTION OF APPEAL AFTER THE DISTRICT COURTS
DENIAL OF DEFENDANT'S RELEASE. IT WAS CLEAR AND UNDERSTOOD AFTER THE
HEARING THAT THIS WOULD BE DONE. IT NEVER WAS. AS SEEN IN LETTERS
TO DEFENSE COUNSEL DATED NOV. 06, 2017, OCT. 13, 2017, DEFENDANT
CLEARLY ASKS WHAT THE STATUS IS WITH NO RESPONSE. THIS BEHAVIOR FROM
DEFENSE COUNSEL IS YET ANOTHER EXAMPLE OF HOW COUNSELS PERFORMANCE
WAS DEFICIENT IN A UNCONSTITUTIONAL ABERRATION OF PREVAILING PROFESSIONAL NORMS.

CONCLUSION OF GROUNDS ONE OF INEFFECTIVE ASSISTANCE OF COUNSEL

FROM DEFENSE COUNSELS FIRST DAY TAKING OVER THIS CASE FROM A COLLEGUE IN THE
FEDERAL DEFENDERS OFFICE AND REVIEWING THE INITIAL CHARGE SHEET OF THIS CASE,
COUNSEL SHOULD HAVE REMOVED HIMSELF FROM THE CASE AS NOT TO ENTERTAIN THE
POSSIBLE OBVIOUS CONFLICT AND PREJUDICE OF THE DEFENDANT BEING CHARGED WITH
IMPERSONATING A NAVAL OFFICER AND COUNSEL HIMSELF SERVING PROUDLY AS A
NAVAL OFFICER. THE OBVIOUS CONFLICT AND PREJUDICE (AND POTENTIAL CAUSE AFTER
IS CLEARING) SHOULD HAVE BEEN DISCUSSED AND LEFT TO THE DEFENDANT WHETHER
TO PROCEED WITH COUNSEL OR SEEK REASSIGNMENT. IT WAS NEVER MENTIONED OR
DISCUSSED AT ANYPOINT WITH DEFENDANT OR THE COURT.

AS SHOWN BY THE COUNTLESS UNANSWERED LETTERS TO DEFENSE COUNSEL
BEGINNING AT THE ONSET OF DEFENSE COUNSEL "TAKING OVER" FROM HIS COLLEGUE,
THE DEFENDANT WAS CONCERNED AS QUOTED IN 3 SEPARATE LETTERS ALL

18

ASKING THE SAME QUESTION "WHAT ARE WE DOING TO PREPARE OUR CASE"?
COUNSEL PERFORMED ALMOST NO MITIGATION, OVERLOOKING VAST REACHES
OF MITIGATING EVIDENCE. DUE TO COUNSELS FAILURE TO DO SO, WHAT
LITTLE EVIDENCE COUNSEL DID PRESENT ACTUALLY BACKFIRED THE STATES/
GOVERNMENTS ACCUSATION CASE. MOST IMPORTANTLY, COUNSEL FAILED TO
INVESTIGATE THE GOVERNMENTS AGGRAVATING EVIDENCE, COUNSEL FAILED TO
TEST ANY PART OF IT, THEREBY FORGOING CRITICAL OPPORTUNITIES TO REBUT
THE CASE IN AGGRAVATION.

COUNSEL DID NOT EXAMINE THE ACCUSATORY INSTRUMENT OR THE FACTUAL NATURE OF
THE CHARGE. COUNSEL DID NOT SEEK OUT OR FOLLOW-UP ON ANY EXCULPATORY EVIDENCE
PROVIDED BY THE DEFENDENT IN CORRESPONDENCE. HAD HE SCRUTINIZED THE ELEMENTS
OF THE CHARGE WITH THE ACTUAL EVIDENCE, IT WOULD HAVE BEEN CLEAR IT DIDN'T
HAPPEN. BY SIMPLY CHARTING OUT THE ELEMENTS AND EXAMINING THE CORRESPONDING
PROOF, COUNSEL COULD/WOULD HAVE EASILY DISTINGUISHED IT DIDNT HAPPEN.

COUNSEL ARRIVED AT SENTENCING GROSSLY UNPREPARED, COMPARING MY CASE TO THE
ENRON FRAUDSTERS, USING TERMS LIKE 'ALTERED' TO DESCRIBE DEFENDANT
AND AGAIN MENTIONING NO MITIGATING EVIDENCE. HAVING DONE NO PRIOR INVESTIGATION,
HE HAD NOTHING TO BRING.

LASTLY, THIS CLAIM OF INEFFECTIVE ASSURANCE IS NOT BASED ON THE
"POST-SENTENCING BLUES" AND "DISTORTING EFFECTS OF HINESIGHT" MANY DEFENDANTS
HAVE. OVER 14-MONTHS OF LETTERS (ALL ATTACHED) FINALLY CULMINATING
WITH A FRANTIC/SOS LETTER TO THE DISTRICT COURT PLEADING FOR
HELP. CLEARLY OUTLINE THE INEFFECTIVE ASSISTANCE ON MANY OUTLINED LEVELS.

So little attention was given to this case. Had Defense Counsel invested a minimum amount of time he would have seen and noticed 2 glaring errors ① Defendant at his change of plea hearing didn't plea guilty to even the right person for identity theft. Defendant obviously pled guilty to using the fictious name "Ronald Black Tailor" as in the transcripts, not Dori Watkins. Defendant never would have pled guilty to that. ② Defense Counsel was ineffective during sentencing. He had a signed plea agreement by all parties that was clear as to the "maximum" exposure. It's clear it was 24-months yet when he had the opportunity to correct the Court with his client he did nothing.

Page 6

Docket or case number (if you know): N|A

Date of the court's decision: N|A

Result (attach a copy of the court's opinion or order, if available): N|A

(3) Did you receive a hearing on your motion, petition, or application? N|A

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application? N|A

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? N|A

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state: N|A

Name and location of the court where the appeal was filed: N|A

Docket or case number (if you know): N|A

Date of the court's decision: N|A

Result (attach a copy of the court's opinion or order, if available): N|A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N|A

**GROUND TWO:** Ineffective Assistance of Appellate Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

① Appellate Counsel missed 2 key areas that should have been argued and presented, Appellate Counsel while challenging the 2-counts of aggravating identity theft missed the most basic area that should have been presented to the court, the actual plea agreement itself. Had counsel looked carefully at the document, he would have found all parties (District Court Judge and U.S. Attorney) all signed and agreed to a term of 24-months for the 2-charges, no where in the document does it mention 48-months. Had counsel seen and argued this signed plea agreement, the outcome would have been different.

② Appellate Counsel while arguing the identity theft charges missed a vital area from the change of plea hearing. Defendant was charged with stealing the identity of victim 'Dion Watling', Defendant clearly did not plead guilty to 'stealing her identity', as clear in the change of

CONT. GROUND # 2

PLEA TRANSCRIPTS, HE PLED GUILTY TO USING THE ALIAS ' RICHARD DEXTER TAILOR ' (A COMPLETELY MADE UP / FICTITIOUS NAME). THE RECORD IN THIS CASE CLEARLY SUPPORTS THAT HE NEVER PLED GUILTY TO USING THE VICTIMS NAME NOR WOULD HE. HAD APPELLATE COUNSEL ALLOWED / INVESTIGATED AND FOUND THIS IT CLEARLY SUPPORTS GROUND OF INEFFECTIVE ASSISTANCE.

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why:

    THIS ISSUE IS FROM THE POST-CONVICTION PROCEEDINGS DURING THE DIRECT APPEAL.
    I DID HOWEVER WRITE COUNSEL POST-PROCEEDINGS ABOUT THE ISSUES.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: N|A

    Name and location of the court where the motion or petition was filed: N|A

    Docket or case number (if you know): N|A

    Date of the court's decision: N|A

    Result (attach a copy of the court's opinion or order, if available): N|A

    (3) Did you receive a hearing on your motion, petition, or application? N|A

        Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application? N|A

        Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? N|A

        Yes ☐   No ☐

    (6) If your answer to Question (c)(4) is "Yes," state: N|A

    Name and location of the court where the appeal was filed: N|A

    Docket or case number (if you know): N|A

    Date of the court's decision: N|A

    Result (attach a copy of the court's opinion or order, if available): N|A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

**GROUND THREE:** DISTRICT COURT VIOLATED THE SIGNED PLEA AGREEMENT

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

CLEARLY, THE COURT DEVIATED FROM THE PLEA AGREEMENT IT ENTERED INTO WITH THE DEFENDANT AND ULTIMATELY SIGNED OFF ON. THE COURT SENTENCED DEFENDANT TO 48-MONTHS FOR AGGRAVATED IDENTITY THEFT (2 x 24 MONTHS). THIS WAS NOT THE AGREED TO AMOUNT, THAT WAS SIGNED BY ALL PARTIES, ONLY AT SENTENCING DID THE COURT FIRST MENTION THIS. THE COURTS OWN RECORD SUPPORTS THIS (THE SIGNED PLEA AGREEMENT) MAKING THIS CLAIM VERY ELEMENTARY.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

APPEAL ATTORNEY JAMES WHALEN CHOSE NOT TOO.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state: N/A

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A


(3) Did you receive a hearing on your motion, petition, or application? N/A

     Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application? N/A

     Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal? N/A

     Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: N/A


Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A


**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

>   (1) If you appealed from the judgment of conviction, did you raise this issue?

>   > Yes ❏  No ❏

>   (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

>   (1) Did you raise this issue in any post-conviction motion, petition, or application?

>   > Yes ❏  No ❏

>   (2) If your answer to Question (c)(1) is "Yes," state:

>   Type of motion or petition:

>   Name and location of the court where the motion or petition was filed:

>   Docket or case number (if you know):

>   Date of the court's decision:

>   Result (attach a copy of the court's opinion or order, if available):

>   (3) Did you receive a hearing on your motion, petition, or application?

>   > Yes ❏   No ❏

>   (4) Did you appeal from the denial of your motion, petition, or application?

>   > Yes ❏   No ❏

>   (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

>   > Yes ❏   No ❏

>   (6) If your answer to Question (c)(4) is "Yes," state:

>   Name and location of the court where the appeal was filed:

>   Docket or case number (if you know):

>   Date of the court's decision:

>   Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: ALL GROUNDS. UNTIL NOW, I'VE NOT PRESENTED ANY CLAIMS OF INEFFECTIVE ASSISTANCE PER THE ADVICE OF PREVIOUS APPELLATE COUNSEL JAMES WHALEN.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ☒   No ☐
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. UNITED STATES COURT OF APPEALS - FIFTH CIRCUIT, NO. 20-40291, THIS PROCEEDING IS AN APPEAL OF A DECISION BY THE DISTRICT COURT IN A MOTION FILED FOR THE PRODUCTION OF FINANCIAL DOCUMENTS RELATED SPECIFICALLY TO THIS APPEAL AND CASE. THE APPEAL IS PENDING NOW.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
    (a) At preliminary hearing: FRANK WALLER HENDERSON - FEDERAL DEFENDERS OFFICE - EASTERN DISTRICT 7460 WARREN PKWY, STE 270, FRISCO, TX 75034

    (b) At arraignment and plea: FRANK WALLER HENDERSON - FEDERAL DEFENDER - EASTERN DISTRICT
    & ROBERT CRAIG ALLENBIDE - FEDERAL DEFENDER - SHERMAN

    (c) At trial: N/A

    (d) At sentencing: ROBERT CRAIG ALLENBIDE
    600 E. TAYLOR
    SUITE 4000
    SHERMAN, TX 75090
    903-892-4448

(e) On appeal: James P. Whalen
9300 John Hickman Parkway, Suite 501
Frisco, Texas 75035

(f) In any post-conviction proceeding: N/A

(g) On appeal from any ruling against you in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☑ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐   No ☐   N/A

Page 13

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* N|A

DEFENDANT DUE TO THE COVID-19 PANDEMIC HAS EXHIBITS TO ATTACH TO THIS §2255 AS REFERENCED BUT HAS BEEN UNABLE TO MAKE COPIES DUE TO "MODIFIED OPERATIONS" AT HIS INSTITUTION. DEFENDANT HAS BEEN TRYING TO GET COPIES MADE FOR OVER 2-WEEKS BY HIS UNIT STAFF WITH NO AVAIL. THE EXHIBITS ARE "ORIGINAL" DOCUMENTS AND DEFENDANT NEEDS A COPY BEFORE SENDING THEM OFF AND RISKING THEM BEING LOST. DEFENDANT SUBMITS THIS §2255 WITHIN ITS TIME LIMITS, ASKING THE COURT TO UNDERSTAND HE WILL IMMEDIATELY SEND THE EXHIBITS AS SOON AS COPIES ARE MADE.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of —
(1) the date on which the judgment of conviction became final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

VACATE SENTENCE, ASSIGN NEW COUNSEL FOR FUTURE PROCEEDINGS AND ANY EVIDENTIARY HEARINGS

or any other relief to which movant may be entitled.

_____

N/A

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct
and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on
_____ (month, date, year).

Executed (signed) on _JULY 24, 2020_____ (date).

_____ ~PRO SE

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not
signing this motion.